Good morning, Mr. White. You are reserved one minute for rebuttal. You can begin when you are ready. Thank you, Your Honor. May it please the Court, my name is Brendan White and I represent appellant Ray Sean Brown in this appeal of the District Court's reversal of the order releasing him out of jail. The District Order committed clear error in failing to fully weigh the very strong community ties, bail package, and conditions of bail, including 24-hour home confinement with electronic monitoring. Doesn't the evidence show that he sold drugs from his residence? That's what's alleged. I'm here to say, assume that he did, would home confinement really adequately address the dangerousness to the community? It's an interesting question. It came up in my reply brief. The question of whether home confinement and the remaining bail conditions, including a couple of hundred thousand dollars secured by real property and the support of, I believe it was ten, but certainly multiple members of the community, including friends and family members, why that would be adequate to ensure against, why the moral suasion, among other things, would be adequate to ensure against him fleeing and thereby... It might not be the moral suasion. It might be the GPS monitoring that would help with respect to flight. But going to Judge Pevez's question on dangerousness, and I think you would concede the evidence, the strength of the evidence here is overwhelming. They searched his home. They found three firearms, two loaded firearms, 72 grams of fentanyl, all kinds of paraphernalia indicating that he was distributing out of the residence. And they have three undercover police controlled buys of 20 grams of fentanyl each. So it's clear error. I understand what you're saying, that in certain circumstances, maybe there could be enough of a package that would persuade him to stop selling from his home. But we have to find it's clear error for a judge to say, I'm not going to put someone on home detention when they were running a fentanyl business with three guns out of their home. We're going to say that's clear error. As your honors may be aware, I do not represent Mr. Brown in the district court, but I have been in communication with his attorney. There's currently a pending suppression motion, an extensive one. I have looked at it, and it appears to be quite extensive, as well as a Franks motion. So I'm not going to concede that the evidence of his guilt there and the evidence of significant... That's what the district court had before it. Whether or not there'll be a successful suppression motion or not, the district court doesn't know. The district court has, this is what was in his home. There were three undercover controlled buys of 20 grams of fentanyl each. I don't think there's a suppression motion with connection with that. My experience in these matters, likely yours as well, Mr. Brown would have a target on his back from pretrial services, from law enforcement, from the government. The odds that he would go, knowing that not only would his friends and family lose their homes, significant amounts of money... That's white again, right? I think it applies to both. Okay, let me, I thought, I think I misunderstood your argument from your papers. I thought your focus was the district court, that your claim was the district court failed to address at all the strength of the proposal. That the district court rested its decision on no conditions are sufficient and didn't weigh, you have a header about not weighing the strength of the bail package. But I haven't heard anything about that. What you're arguing so far is re-weighing the factors, which I don't think we can do, at least not in fairly, in the ordinary circumstances. But do you want to address this question of whether the district court was required to address in its opinion, your, in its decision, the proposal that was made and the strength and the balancing of it? In most cases, most presumption cases, of course, the charges are going to be serious. I would certainly imagine that almost any case brought in federal court, there's going to be a reasonable argument that the evidence is strong. It's almost always going to come down to the strength of the package, the conditions, the moral suasion provided by those conditions. Is there an error? Are you able to point to a case that says there's error for the district judge, or sometimes the magistrate judge, the decision maker, to fail to expressly address in their decision the actual package proposed and the strength of that proposal? Is that an independent error? Because, as I say, I don't think there's not a lot of traction here on whether we would re-weigh the 3142 factors. So the other error you appear to be raising, which, again, I'm still not hearing, and maybe you're not pursuing it, is that the district court failed to address, consider, and weigh against the other factors the strength of the package. Is that an independent error that warrants remand? It's inherent in the statute, I would submit. I concede that I don't have any cases saying it. But what else could the statute mean if it doesn't require where you have serious charges, you have some quantum of evidence, and now it's going to come down to the third factor? So, yes, absolutely. The Court has to make that determination. But there is one line. It doesn't go through the particular conditions, but the district judge said, while the magistrate judge put in place some strict conditions, the undersigned disagrees that they were reasonably protected against the serious danger posed by the defendant's release. And earlier, she says, based upon analysis, the fact is the defendant is a violent drug dealer engaged in the trafficking of lethal narcotics out of his residence where he operated a drug distribution center and possessed dangerous weapons. So, I mean, she indicates she's reviewed the strict conditions that were proposed and accepted before the magistrate judge. And, you know, I think it's clear that she was considering the fact that he was selling the drugs out of his home, right? The same judge also said it's hard to imagine a stricter, more powerful bail package and conditions of release than this. So I don't know how those two conclusions could logically coexist. All right. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. Sean Eldridge for the United States. The district court did not commit any error, much less clear error, in ordering Mr. Brown's detention, and this Court should deny the bail motion. At bottom is, I think, some of the questions we're geared towards. The argument really here is focused on the defendant's desire to have a reweighing of the factors.  I mean, is it a reweighing of the facts if the fourth factor was cursory and the district court didn't explain why the potential conditions were insufficient? No, Judge, I don't – first of all, I respectfully disagree with Your Honors' reading of the record. I don't think this proceeding was cursory at all. No, no, no. The fourth factor. Sure. Would you even concede – you wouldn't even concede that the discussion of the fourth factor was conserved cursory? I would not, Judge. And I think – Anyway. Sure, absolutely. So I think part of it goes back to reading it in conjunction with the comments that Chief Judge Wolford made during the oral argument, where I think she very carefully goes through each of those factors. And the three that she says weigh very strongly in favor of detention, the strength of the evidence, the nature and circumstances, and the danger posed by that defendant's release. And she specifically discusses the dangers of fentanyl, how this went on for several years, how now essentially the moral assuasion that the defendant's – She didn't – she didn't explicitly address why the home detention was insufficient to address the dangerousness, right? There was no – no part of the opinion that said as to the – why home detention – there was nothing in there about that. I think what she did do, though, Judge, is she specifically addresses what each of the four factors are. And she was very clear about this during the oral argument, too. Before the parties really got into their presentations, and especially before Mr. Brown did, she made it very clear to say, here's kind of how I'm leaning. I see these three factors that weigh very heavily towards the government. I see the personal circumstances, meaning the lack of criminal history in that, that third – excuse me – factor number three weighs in favor of the defendant's release. And I'm trying to decide, does that outweigh the other one? And that's exactly what the proceeding was focused on. And I think that's exactly what Zhang teaches us. Zhang teaches that there's no hierarchy between the four factors, that it's a fact-intensive, driven determination, and that the Court is free to weigh those factors differently in different cases. And I think that's exactly what, you know, Judge Wolford did here in addressing those. In terms of the release, I think there – I don't have a record site for it, but I do think there were discussions about how GPS and that basically would assuage against flight as opposed to danger, right? And in fact, I think one of the studies that my friend cites in his brief talks exactly about that. It's at the bottom of page 18, saying that GPS is an effective condition for people who are detained not for danger but for flight. And that could assuage that concern. I'm sorry, Your Honor. Part of the struggle I'm having is to hear the way that you are discussing the fourth factor. It's almost as if it's a conclusion of the other three as opposed to something independent. Well, I think it is independent, Your Honor, but I think that there's absolutely overlap between the factors, right? Because in the fourth factor, you're talking about the nature and the seriousness of the danger that would be posed by that person's release, right? I'm not talking about flight because that's not the basis of the Court's decision. So the Court has to say, what do I think is the nature and the seriousness of this person's potential release in light of all of the content? So the fourth factor strongly supports detention. That's right. So that is not cursory? That's not conclusory? Well, maybe that one sentence is, Your Honor, but in the entire 11-page decision. I mean, that's a different argument. We started off by me asking you, as a legal matter, was there error for having a fourth factor for having a conclusory statement, and you said it wasn't. And now you're kind of, it is, but the other three do more work because of your weighing it. So I think we're where I thought we were going to start in the beginning. Okay. I apologize if I miscommunicated. My point is to say I think the decision as a whole lays them out. Yes is maybe the concluding sentence at the end. Conclusory, yes. But in light of everything else that's in the 11-page decision and the very lengthy oral argument transcript, I don't think there's any error, much less clear error. The last thing I'll say on that — Justice, the dangerousness factor include things like how the family that wants him home and their need for his ability to contribute to their financial investment, to their well-being and how they're willing to invest in that. Where do we consider, in what realm do we consider the support that he had? I think, understanding the district court can weigh that almost any way that it wants, right? Where do I think that fits into the most? I think it fits into the factor that my friend on the other side is talking about, right, the defendant's history — Not the dangerousness. — history and characteristics. I think the court could take it into account there. But here what the district court did in talking about that specifically was to say things like, I sure hope that the defendant isn't residing, you know, in a house with his and a gas mask and three firearms and fentanyl. And see, also, district court — excuse me, Chief Judge Wilford also makes the point of saying that in terms of the family support, that he's unemployed, that he has no means of support, and the one that he proffered is something that his girlfriend explicitly disavowed. So those are factors that she took into consideration, I think, correctly. I think they correctly, most appropriately go towards the personal circumstances and characteristics of the defendant, but I don't think they're precluded from being weighed in the factor Your Honor is talking about. Thank you. Thank you very much. I'd ask you to deny the motion. Mr. Wright, you have one minute on rebuttal. Thank you, Your Honors. Just very quickly, I do want to point out that at the time of the initial grant of bail, there was a special condition permitting Mr. Brown to receive outside-the-home medical treatment. And just to further emphasize that his medical condition has only gotten worse. I know I discussed it briefly in my papers, and I have been advised that he does need to receive surgery. He had been shot, apparently in something utterly unrelated to the allegations here. But on top of that, he's now suffering from serious prostate and testicular issues. He was examined in the jail, and they told him he needed surgery? Yes, that's correct. This is only very recent, and I spoke, I understand this is very recent, Your Honor. I spoke to his attorney two days ago, who explained to me he's actually seeing him today. He was unable to see him before that. But it's all of our understandings, and I am in contact with his fiancee, that he has not yet been able to schedule the surgery. For what it's worth, he's not in BOP custody. He's at Livingston County Jail. Thank you, Your Honor. Let me say 30 seconds on Shor's point. In terms of that, the medical issue that was raised here is not something that was raised below. So I think under Hoshevar, which has been the settled law of the circuit for about 25 years, it should be raised there first. And to the extent that that is a basis for a motion to reopen, we'd oppose it, but you can bring that below. But in any event, Your Honor's point is absolutely correct that there's nothing in the record about surgery. I don't, I'm not. Well, if he does need a surgery, I assume the government will help to make sure that that happens in the jail. He's been being seen by a urologist, a specialist, while he's been in custody the entire time. That's right, Judge. Thank you. Thank you both. We'll reserve the decision. Have a good day.